UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 07 CR 834 |
| | ) | |
| ZUBAIR AHMED | ) | Judge John Robert Blakey |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S MOTION TO
MODIFY CONDITIONS OF SUPERVISED RELEASE**

The UNITED STATES OF AMERICA, by its attorney JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, submits this Motion to Modify Conditions of Supervised Release.

### I.  PROCEDURAL BACKGROUND

On or about December 13, 2017, defendant Zubair Ahmed, was charged in the Northern District of Ohio with conspiring to kill or maim persons in locations outside the United States, in violation of Title 18, United States Code, Section 956(a)(1). *United States v. Zubair Ahmed*, 1:07CR647 (NDOH), Doc. #1. On or about January 15, 2009, a superseding information was filed which charged the defendant and Khaleel Ahmed, with, between April 1, 2004, and February 21, 2007, conspiring to provide material support and resources, specifically themselves as personnel, knowing and intending that they were to be used in preparation for and in carrying out a violation of Title 18, United States Code, Section 956 (conspiracy to kill and maim individuals outside the United States, including members of the U.S. military

serving in Iraq and Afghanistan), in violation of Title 18, United States Code, Section 2339A. *Ahmed*, Doc. #129.

On or about January 19, 2009, defendant pled guilty to the superseding information. On or about July 14, 2010, defendant was sentenced to ten years' incarceration and a three year term of supervised release. *Ahmed*, Doc. #196.

On or about August 17, 2018, defendant was released from custody and his period of supervised release commenced. On November 6, 2018, defendant's supervision was transferred to the Northern District of Illinois.

## II. FACTUAL BACKGROUND

In furtherance of their conspiracy, among other conduct, the defendant and his co-defendant traveled to Cairo, Egypt with the intention of engaging in violent jihad against U.S. and coalition forces in Afghanistan. As part of the conspiracy, the defendant corresponded with third parties via computer and other means, to discuss their intent to engage in violent jihad. In furtherance of their objective, the defendants sought out physical training and prepared financially for their mission. They used code words and spoke in Urdu to conceal their conduct from others.

The defendant, in a statement he submitted to the probation officer in Ohio for purposes of his Pre-Sentence Report, acknowledged that he "spent countless hours on the internet connecting to Islamic and Jihadist websites which spoke of the need to resist and fight these foreign intruders who were bent on undermining Islamic sovereignty and were imposing their power on subjugating the people." The defendant admitted downloading "videos of war and insurgent actions." He stated that the

websites and chat rooms he visited "made compelling arguments that such violent Jihad and military support for the insurgency were justified under the Koran." PSR ¶¶ 68 – 73.

### III. ARGUMENT

#### A. Legal Standard

A district court has the authority to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. 3583(e)(2). The district court may modify the terms even if the defendant had not violated them. "Nothing in Section 3582(e)(2) requires a violation of existing conditions, or even changed circumstances." *United States v. Evans*, 727 F. 3d 730, 732 (7th Cir. 2013); *United States v. Neal*, 810 F.3d 512, 516 (7th Cir. 2016).

> Any modification, like the original conditions, must (1) be 'reasonably related to the factors identified in § 3553(a), including the nature and circumstances of the offense and the history and characteristics of the defendant; (2) involve no greater deprivation of liberty than is reasonably necessary for purposes set forth in § 3553(a); and (3) be consistent with the policy statements issued by the sentencing commission.' *United States v. Ross*, 475 F. 3d 871, 873 (7th Cir 2007).
>
> *Evans*, 727 F. 3d at 733; *see also United States v. Jones*, 798 F.3d 613, 619 (7th Cir. 2015).

"Conditions [of supervised release] may need to be altered to fit changes in society (a good example in recent years has been the practical necessity for some access to the internet, which had earlier been considered a luxury)." *Neal*, 810 F.3d at 519.

## B. Proposed New Condition of Supervised Release

The Probation Department has proposed that the defendant's conditions of supervised release be modified to include the imposition of the Computer and Internet Monitoring Program ("the program") which requires the "installation of computer monitoring software on all identified computers to which" the defendant has access. The program software can record all activity on a computer or other electronic device to include "the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations." *Petition on Probation and Supervised Release,* December 10, 2018. The purpose of the program is allow the probation department to be aware of the defendant's internet and computer activity in order to ensure the defendant does not violate any of the conditions of supervised release.

Specifically, the following would occur:

1) The defendant, and the family that he resides with, would be required to designate a computer and a smartphone that the defendant has access to, to the exclusion of any other computer or smartphone in the home. The program software would be installed on the designated devices.[1]

2) The defendant and his employer – who is his father – would identify any computer the defendant has access to at the place of employment. The program software would be installed on that computer with a notice to other users of the

---

[1] The software does not function on iPhones, which the defendant currently possesses. Therefore, the defendant would be required to purchase an Android phone.

existence of the program.[2]

3) The program would be installed by RemoteCom. RemoteCom provides "monitoring service for the management of pretrial, probation and parole clients."[3] The defendant is required to pay for the program, which incurs an initial set up fee and a monthly fee of $35 per device.[4]

4) RemoteCom monitors all material, data, images and information found on an electronic device. If the defendant engaged in potentially improper conduct, RemoteCom would notify the probation officer who has the ability to investigate further. Due to the ever changing nature of websites and the constant opening and closing of sites, it is difficult to identify a pre-determined list of prohibited sites. Instead, RemoteCom would use judgment in determining whether to notify the probation officer.

5) The program, which is the same program used in sex offense cases, does not restrict the defendant's ability to use his computer or smartphone, or block his ability to visit websites. It allows the defendant to fully function on the internet and to conduct is employment responsibilities.

---

[2] As a suggestion, it might be easier if the defendant purchased a laptop that he alone exclusively used and that he used both for personal needs and at his place of employment. This would limit the number of devices that the program software would be loaded onto, limit the cost and would not collaterally subject third parties to the program.

[3] http://www.remote-com.com/

[4] *Id.*

## C. The Proposed Modification is Warranted

Terrorist organizations use the internet for "propaganda to inspire and terrorize, direct recruitment, and operational direction." *An Intelligence Reserve Corps to Counter Terrorist Use of the Internet* by Daniel Byman[5]; *see also*, *Preventing Terrorist Use of the Internet*, 20 September 2017, 17.15 – 18.45, CR4, UN HQ[6] ("Terrorist use of the internet to incite, inspire and direct terrorist and violent extremist acts is one of the most pressing issues that the global community currently faces.")

The defendant was convicted of a terrorism offense during which he utilized the internet to communicate with co-conspirators in furtherance of his offense, to discuss, for example, the need to prepare for "the final war of Islam" and their active participation in violent jihad. The defendant also acquired, viewed and stored on computers and other storage media, videos depicting violent encounters between the U.S. military or coalition forces, and insurgency groups in Iraq, Afghanistan and elsewhere, as well as copies of U.S. military publications, and other material regarding jihad-related topics. As the defendant stated to the probation officer, the source of the videos and related material were derived from his use of the internet and served as the catalyst to the commission of his offense.

The requested modification is necessary to ensure that the defendant does not, again, become radicalized through the easy path of the internet where recruitment

---

[5] https://www.hoover.org/research/intelligence-reserve-corps-counter-terrorist-use-internet

[6] http://www.un.org/webcast/pdfs/170920pm-terrorist-internet.pdf

and indoctrination material lies only keystrokes away. The abundance of social media applications that allow for encrypted communication, and the well-known use of such applications by terrorist organizations,[7] would easily enable the defendant to communicate with terrorists overseas and return to the path of violent jihad.

The internet and computer monitoring software would allow the probation department to be notified if the defendant visited any concerning websites related to terrorism, or engaged in any terrorism related activity on his computer. The notification would provide the probation officer the opportunity to intervene, and alert the Court and the parties if necessary. As someone who used the internet to further his offense, coupled with his deceptive behavior while incarcerated,[8] this proposal is in step with the relevant 3553(a) factors as it squares with the defendant's history and characteristics, and is related to the nature and circumstances of the offense. It would also deter the defendant from visiting improper websites, or communicating with prohibited third parties, and ultimately could protect the public from further crimes.

Moreover, the sentencing court imposed, as a special condition of supervised release, that the defendant shall submit to a warrantless search of his computer (and other items), conducted by the probation office, based upon "reasonable suspicion" of evidence of a violation of a condition of release, which includes the prohibition of associating with persons engaged in criminal activity. *Ahmed*, Doc. #196. Without

---

[7] https://ctc.usma.edu/how-terrorists-use-encryption/

[8] The defendant received an incident report for Mail Abuse after he admitted to communicating with another inmate through a third party.

the monitoring program, the probation officer is handicapped in determining if reasonable suspicion of a violation exists.

The imposition of the proposed monitoring system is minimal and does not impose a deprivation of liberty that is greater than necessary. It does not prevent the defendant from accessing the internet nor does it prevent him from employment. Once the system is in place, it will not inhibit the defendant's daily activities and will only serve to prevent him from engaging in further criminal conduct. Moreover, the defendant's term of Supervised Release is only three years. The imposition will not be indefinite and the defendant has the option of returning to the Court in the future to request the removal of the program (it is, of course, premature at this time for the government to take a position on any such request).

The government does not anticipate presenting any evidence or testimony at the hearing on this matter, currently scheduled for April 3, 2019.

Conclusion

In today's world, the prolific use of the internet by terrorist organizations complicates law enforcements' job in identifying individuals who have become radicalized and pose a threat to national security. The defendant was one of those individuals. The monitoring program should be installed on his electronic devices to give the Probation Department the tool it needs to ensure that the defendant does become a recidivist. The government requests that the Court grant the government's motion for a modification of the defendant's conditions of supervised release.

Dated: March 1, 2019

Respectfully submitted,

JOHN L. LAUSCH, Jr.
United States Attorney

By: */s/Barry Jonas*
BARRY JONAS
Assistant U.S. Attorney
219 South Dearborn Street, Fifth Floor
Chicago, Illinois 60604